**Edward J. SLOVACEK and Frankie J. Slovacek, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 94–457T.**

United States Court of Federal Claims.

Aug. 2, 1996.

 

## Order

WEINSTEIN, Judge.

This is the lead case in Group A of the interrelated tax cases discussed in *Tiensch v. United States,* 33 Fed.Cl. 493, 494 (1995). Defendant has moved to dismiss the complaint in part or, in the alternative, for partial summary judgment. After briefing and oral argument, the motion is granted.

### Background

On July 18, 1983, Nupath Development Three (Nupath III), a partnership, filed its tax return showing a loss for a short year ending December 31, 1982. Def.App. B130. The return was signed "Christian S. Nielsen, Designated Partner." *Id.* Plaintiffs Edward and Frankie Slovacek submitted their 1982 personal return on October 11, 1983, reporting a loss of $22,600, an amount proportionate to Mr. Slovacek's financial interest in the Nupath III partnership. Def.App. B5. By letter dated November 23, 1983 to plaintiffs, the IRS requested additional information regarding the 1982 return. Def.App. B17.

On July 26, 1984, the Internal Revenue Service (IRS) wrote Mr. Slovacek, among other partners, that it was beginning an audit of the partnership for the year beginning December 30, 1982 and ending December 31, 1982. Def.App. B20. The letter stated:

> The Service is not required to notify partners individually of conferences or other events during this proceeding. The tax matters partner is responsible for notifying partners of the more important events during the proceeding, but the results of the proceeding generally apply to all partners even if the tax matters partner does not provide that information.

*Id.*

The IRS notified Mr. Slovacek (and other Nupath III partners) of proposed adjustments to the partnership return by letter dated December 16, 1985, stating that if the TMP was unable to furnish copies of the examination report explaining the adjustments, they could contact V. Blythe at (512) 462–8296. Def.App. B21. This letter also enclosed an individual settlement agreement to treat the partnership items on plaintiffs'

own tax return "in the same way that these items are treated on the partnership return (as modified by the proposed adjustments)" and advised that such agreement "will be binding and will not be affected by any later administrative or judicial determination" and that, if not accepted, plaintiffs might request an appeals conference. *Id.* The letter also stated that if the IRS did not receive a written protest of the proposed schedule of partnership adjustments from one or more partners within sixty days, it would process the case based on those adjustments. B22.

On February 20, 1986, within the sixty-day period, Christian Nielsen signed the line marked "Tax Matters Partner Signature Here" on a Form 872–O, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership. This extended the deadline for assessing tax with respect to any Nupath III partnership items (otherwise July 18, 1986) until one year after the final determination of the partnership items. Def. App. B23–24.

Mr. Nielsen, who owned the smallest share of any partner, was identified in the Nupath III partnership agreement as its "Designated Partner." This term is not defined in the I.R.Code or the regulations thereunder. It was defined in the Nupath III agreement as follows:

> 6.4 *Designated Partner.* The Partnership may appoint a Designated Partner who shall be authorized to do the following: (a) carry out decisions made by the Partnership, (b) act on behalf of, and as the authorized representative of, the Partnership with respect to third parties, (c) handle such administrative matters of Partnership as may be required by the business of the Partnership, and (d) carry out such other duties, responsibilities, and

authority as the Partnership may assign to him from time to time.

> The Designated Partner shall be authorized to execute all documents, instruments, and other papers on behalf of the Partnership, including, without limitation, contracts and promissory notes which have been approved by the Partnership. . . .

Pl.App. B11–12.

The agreement also stated that certain major actions, including assigning partnership property in trust for creditors, "confess[ing] a judgment," or "submit[ting] a Partnership claim or liability to arbitration or reference," required unanimous approval of the partners. Pl.App. B13. The agreement did not specifically appoint (or even mention) a TMP.

On March 16, 1987, the IRS issued a Notice of Final Partnership Administrative Adjustment (FPAA) disallowing Nupath III's entire loss. Def.App. B25. The FPAA was addressed to "Christian S. Nielsen, Tax Matters Partner, Nupath Development Three, . . . ."[1] Def.App. B25.

The IRS is required to send a copy of the FPAA to each notice partner, such as Mr. Slovacek. Internal Revenue Code (I.R.C.) § 6223(d)(2).[2] (While there is no direct evidence that Mr. Slovacek received the FPAA issued in March 1987, plaintiffs do not deny receipt.)

On May 26, within the ninety-day period during which only a TMP may file a petition for readjustment, *see* § 6226(a), Mr. Nielsen, stating (evidently incorrectly) that he was the duly appointed TMP, filed a petition for readjustment in the Tax Court. Def.App. B33; *Nupath Development Three, Christian S. Nielsen, Tax Matters Partner v. Commissioner,* No. 14541–87 (Tax Ct.).[3] The Tax

---

**1.** The record does not reveal how previous correspondence was addressed. *See* Treas.Reg. § 301.6223(a)–1T(a)(1) (permitting correspondence to the tax matters partner to be addressed to "The Tax Matters Partner" at the partnership's address).

**2.** Section references are to sections of the Internal Revenue Code of 1954, as amended, as codified at Title 26 of the U.S.Code, and the Treasury Regulations, as codified at 26 C.F.R., as in effect at the relevant time.

**3.** The question of whether the Tax Court had (and has) jurisdiction over the partnership petition when it was filed during the 90–day period following notice by Mr. Nielsen and he was *not* the TMP, and when no notice partner filed a petition within the following period of 60 days, as required by I.R.C. § 6226(a), has not been specifically raised to or decided by the Tax Court. Nevertheless, in 1992, Harry Affleck, who owned the largest share in Nupath III, Pl.App. B28, moved to intervene in the Tax Court case, *see* I.R.C. § 6226(b)(5) (allowing intervention by

Court proceeding is still pending, and plaintiffs' counsel has represented that settlement discussions are in progress.

On February 25, 1991, the IRS offered each of the Nupath III partners individual settlement arrangements, by which each would agree to his share of the adjustments in the FPAA; the twenty-five percent substantial understatement penalty, *see* I.R.C. § 6661; and additional interest, *see* I.R.C. § 6621(c). In exchange, the IRS would agree to forego any negligence penalties under I.R.C. § 6653(a). Def.App. B58–59. On March 22, Mr. Slovacek executed Part I (partnership items), but not Part II (penalties), of a Form 870–L(AD), Settlement Agreement for Partnership Adjustments and Affected Items.[4] Def.App. B66. On April 17, 1991 the IRS accepted the offer and so notified the TMP.Def.App. B68.

Part I of the settlement agreement provided,

Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year(s) shown on the attached schedule of adjustments. The undersigned, in accordance with section 6224(b) of the Code, also offers to waive the restrictions on the assessment and collection of any deficiency attributable to partnership items (with interest as required by law) provided in section 6225(a).

This offer is subject to acceptance for the Commissioner of the Internal Revenue Service. It will take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it will have no force or effect.

If this offer is accepted for the Commissioner, the treatment of partnership items

under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.

Def.App. B66; *see also* I.R.C. § 6224(c)(1) ("In the absence of a showing of fraud, malfeasance, or misrepresentation of fact— ... [a] settlement agreement between the Secretary and 1 or more partners in a partnership with respect to the determination of *partnership items* for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of *partnership items* for such partnership taxable year.") (emphasis added).

The "Schedule of Adjustments" attached to the Form 870–L(AD) indicates that the entire loss reported on Nupath III's 1982 return, totalling $602,667, was disallowed. Def. App. B67. Accordingly, plaintiffs' entire $22,600 loss deduction claim was disallowed. Def.App. B74.

On September 2, 1991, the IRS notified plaintiffs of the amount of tax ($7,402) and interest ($13,687) resulting from the settlement agreement's disallowance of the $22,600 Nupath III loss. Def.App. B4.1, B75. It mailed them notice of the proposed assessment of a penalty for substantial understatement ($1,851) on September 20. Def.App. B72, B79. The IRS also assessed additional interest ($392) on November 18, additional penalties ($74) on December 5, and additional interest ($2,594) and the substantial understatement penalty ($1,851) mentioned in the September 20 letter on February 3, 1992. Def.App. B4.1.

On May 19, after paying the assessments, totalling approximately $26,000, *id.*, plaintiffs

TMP *in action brought by a notice partner*), on the grounds that he was and is the TMP. Pl.App. B41. Mr. Affleck also "ratifie[d]" and "affirm[ed]" the petition filed by Mr. Nielsen. Def. Rep.App. B6. The Tax Court granted Mr. Affleck's motion, and changed the caption to *Nupath Development Three, Harry S. Affleck, Tax Matters Partner v. Commissioner.* Pl.App. B44. Also, in 1993, the Tax Court dismissed a petition for readjustment filed by Mr. Nielsen with respect to a related partnership, on the grounds

that Mr. Nielsen was not the TMP, and the actual TMP had not ratified the petition. Pl.App. B58. *Venture Tech, Christian S. Nielsen, Tax Matters Partner v. Commissioner,* No. 14542–87 (Tax.Ct. Aug. 12, 1993).

4. It appears that Mr. Slovacek was one of only three partners executing settlement agreements. Def.App. B68.

filed an amended return on Form 1040X and a claim for refund and abatement on Form 843, seeking a full refund of these payments, on the grounds, *inter alia,* that the three-year statute of limitations, I.R.C. § 6229(a), had expired before their settlement was executed, and had not been validly extended by Mr. Nielson because he was not the TMP, making the tax an overpayment refundable pursuant to § 6401. Def.App. B106–24. The claims were disallowed on July 14, 1992. Def.App. B127. Plaintiffs filed suit in this court on July 14, 1994.

## Discussion

Plaintiffs seek a refund of "overpayment" of the taxes they paid pursuant to the settlement agreement, under I.R.C. §§ 6401–02, which defines "overpayment" to include the payment of any tax assessed or collected after the expiration of the period of limitation. *See Cohen v. United States,* 995 F.2d 205, 207 (Fed.Cir.1993). Defendant argues that the court lacks jurisdiction over that portion of the claim seeking a refund of the tax and interest (Part I of the Form 870–L(AD)), but not over Part II, the portion relating to penalties, since these were excluded from the settlement agreement. It has moved for partial dismissal or, in the alternative, partial summary judgment.

■ Defendant's principal argument is that jurisdiction is barred by I.R.C. § 7422(h), which provides, "No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) [ (claims relating to items the taxpayer deems to be partnership items, but the IRS deems to be nonpartnership items) ] or section 6230(c) [ (claims arising out of erroneous computations) ]." Plaintiffs argue that their action is not barred, because their refund is based on the statute of limitations and is not "attributable to a partnership item," or to a factor "affect[ing] the determination of partnership items," Treas.Reg. § 301.6231(a)(3)–1(b).

The court concludes that the items covered by the settlement agreement come within the definition of "partnership item" under I.R.Code sections 6221–33, and the regulations thereunder.

Under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. 97–248, 96 Stat. 324, codified at I.R.C. §§ 6221–33, effective for partnership years beginning after September 3, 1982, all administrative and judicial proceedings regarding partnership items are required to be conducted at the partnership level. The principal purpose of TEFRA is to provide consistency and reduce duplication in the treatment of partnership items by requiring that they be determined in a single unified proceeding at the partnership, rather than the partner, level. H.R.Conf.Rep. No. 760, 97th Cong., 2d Sess. 599–600 (1982), *reprinted* in 1982 U.S.C.C.A.N. 1190, 1371–72.

TEFRA distinguishes between tax determinations and items that affect the entire partnership ("partnership items") and those that depend, instead, upon the unique circumstances of a partner, or some other nonpartnership-wide variable ("nonpartnership items"). For example, the question of whether a partner must pay tax on a sum she receives from the partnership upon her termination is a nonpartnership item. *Jenkins v. Commissioner,* 102 T.C. 550, 554–57, 1994 WL 112979 (1994).

Partnership items receive the same treatment in the hands of a partner as at the partnership level. The amount of the item, however, is proportional to the partner's share in the partnership item. Taxable income to the partnership is a partnership item, and thus a partner's proportional share of it must be reported as taxable income to the partner. If the partnership has a business loss, each partner wishing to take the deduction must report his proper share of that loss on his individual return. This share is a "computational affected item," as it is determined by a computational adjustment to the total tax attributable to the entire partnership. However, whether a partner may fully deduct his share of the item that year depends on the partner's individual, unique circumstances, *e.g.,* whether he has sufficient income that year against which to offset any part of the loss. If so, the taxpayer's final

taxable income for that year is an "affected item."

When a taxpayer enters into a settlement with the IRS with respect to his share of a partnership item, that share becomes a non-partnership item. I.R.C. § 6231(b)(1)(C). That is because the value or treatment of the item in the hands of the individual partner is determined solely by the terms of the settlement agreement and the taxpayer's own circumstances, and not by any subsequent tax determination with respect to the partnership.

TEFRA defines "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations ... provide that ... such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). Under these regulations, partnership items include income; gain; loss; deduction; credit; nondeductible expenditures; tax preference items; exempt income; partnership liabilities; and assets, investments, transactions and operations necessary to determine investment credit or its recapture, amounts at risk, the oil and gas depletion allowance, and the application of § 751(a) and (b) (regarding partnership sales or exchanges). *See* Treas.Reg. § 301.6231(a)(3)–1(a)(1)(i)–(vi). They also include determinations affecting such items. Treas.Reg. § 301.6231(a)(3)–1(b).

The statute of limitations for partnership assessments is set out in I.R.C. § 6229(a), which is part of *subtitle F* ("Procedure and Administration") of the Code, not *subtitle A* ("Income Taxes"), which defines "partnership item." *See* Treas.Reg. § 301.6231(a)(3)–1(a). Nor is the statute of limitations expressly encompassed by the regulatory definition, since it does not appear on the list of partnership items at Treas.Reg. § 301.6231(a)(3)–1(a).

The question is thus whether the partnership's statute of limitations is encompassed by Treas.Reg. § 301.6231(a)(3)–1(b), which covers accounting practices, as well as the legal and factual determinations that underlie the determination of the amount, timing, and characterization of the partnership items set out in § 301.6231(a)(3)–1(a).

Determining whether Mr. Nielsen extended the statute of limitations might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner. Conversely, a statute of limitations issue applicable only to an individual partner involves questions of fact pertinent only to that partner, *e.g.*, whether he extended the statute of limitations for his own return, *see* I.R.C. § 6229(b)(1)(A), or timely entered into a settlement agreement solely with respect to the partner's return, *see* I.R.C. § 6229(f), or participated in preparing a fraudulent partnership return, *see* I.R.C. § 6229(c)(1)(A).

█ The court concludes that Nupath III's alleged business loss is exactly the sort of item that, because it applies to all partners, TEFRA intended to be decided at the partnership level. Moreover, whether a statute of limitations applicable to the partnership as a whole was waived so as to permit assessment of additional taxes against the partnership as a whole is an issue to be decided at the partnership level, since it affects all partners alike (to the extent of their proportionate share). That is, if the enlargement was invalid, *e.g.*, because unauthorized, the statute of limitations has run against the government for all items (other than fraud) related to partnership items, whereas, if the enlargement was valid, the entire partnership may be assessed, and cause an increase in liability applicable to each partner to the extent of the proportionate share of each.

Plaintiff argues that when the Secretary enters into a settlement agreement with an individual partner, any items subject to that agreement cease being partnership items, and thus are *not* barred even by the terms of the settlement agreement itself. *See Alexander v. United States*, 44 F.3d 328, 332–33 (5th Cir.1995) (citing *Ewing v. United States*, 914 F.2d 499, 505 (4th Cir.1990) (holding that § 7121 closing agreement does not bar refund claim based on statute of limitations), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991)). This argument, however, at the very least, is circular. It would

render any IRS settlement agreement with an individual partner futile, superfluous, and, basically, nonsensical, since it would not in fact waive or release any of the claims relating to partnership items, even if these were released or waived under the express terms of the settlement agreement. For this reason, to the extent each suggests this result, the court declines to follow the decisions in *Alexander v. United States,* 44 F.3d at 331, *Pilie v. United States,* 56 F.3d 686, 688 (5th Cir.1995), and *Treaty Pines Investments Partnership v. Commissioner,* 967 F.2d 206, 210 (5th Cir.1992).

▋ Alternatively, defendant contends that plaintiffs waived both their claim to a tax refund attributable to a partnership loss and interest thereon *and* their right to rely on the supposed invalidity of the partnership's waiver of the statute of limitations in executing the Form 870–L(AD). The court agrees. Clearly, plaintiffs, like any taxpayer, may by agreement waive their legal right to a refund. *Alexander,* 44 F.3d at 332 (citing *Hennessy v. Bacon,* 137 U.S. 78, 82, 11 S.Ct. 17, 18–19, 34 L.Ed. 605 (1890)); *see also Goldman v. Commissioner,* 39 F.3d 402, 405 (2d Cir.1994) (income tax settlement agreement (Form 870–AD) must be construed using general principles of a contract law) (citing *Treaty Pines,* 967 F.2d at 211). The waiver agreement may be enforced regardless of the legal or factual basis for the taxpayer's claim for a refund, *i.e.,* whether it is based on a statute of limitations or some other legal or affirmative defense to an assessment. *See, e.g., United States v. McGaughey,* 977 F.2d 1067, 1071–72 (7th Cir. 1992) (agreement waived statute of limitations), *cert. denied,* 507 U.S. 1019, 113 S.Ct. 1817, 123 L.Ed.2d 447 (1993); *Fennell v. United States,* 830 F.Supp. 1368, 1371 (D.Colo.1993) (same), *aff'd without op.,* 43 F.3d 1482 (10th Cir.1994). Thus, they may waive the protection of a partnership's statute of limitations defense to which they might otherwise legally be entitled, albeit derivatively, as partners. Whether or not the statute is "jurisdictional" is irrelevant, since legal issues such as the lack of jurisdiction may be waived as readily as any others in a settlement agreement. *See, e.g., McGaughey,* 977 F.2d at 1071–72; *Fennell,*

830 F.Supp. at 1371; *Temple v. United States,* 11 Cl.Ct. 302, 305–06 (1986) (taxpayer who agreed to be bound by Tax Court test case barred from making arguments contrary to that decision).

Using common principles of contract construction, the court must give some meaning to the plaintiffs' undertaking, in the settlement agreement, to waive any claims based on partnership items. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir. 1985). If all such items become "nonpartnership items" that may *not* be waived at the instant the agreement is signed, no waiver of such items could ever occur. As already stated, this would make any IRS settlement agreement with a partner waiving his right to a refund related to a contested partnership item utterly meaningless and without effect.

In light of these conclusions, the court need not address defendant's argument that the statute of limitations had *not* expired at the time of the assessment, because Mr. Nielsen, who agreed to the extension, was in fact the TMP. *But see Transpac Drilling Venture, 1983–2 v. United States,* 83 F.3d 1410, 1412 (Fed.Cir.1996) (suggesting in dicta that holding oneself out as the TMP does not make one the TMP if he does not meet the statutory criteria).

### Conclusion

For the reasons stated above, defendant's motion for partial summary judgment is granted.