**Edward J. SLOVACEK and Frankie J. Slovacek, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 94–457T.

United States Court of Federal Claims.

May 6, 1998.

## Opinion and Order

WEINSTEIN, Judge.

On November 26, 1997, plaintiffs filed a motion to compel consistent treatment ("Motion") seeking (1) to require defendant to settle this case on the same terms offered to other partners of Nupath Development III ("Nupath") by the Internal Revenue Service ("IRS") and the Department of Justice's (DOJ) tax division office in Dallas or, alternatively, (2) leave to amend their complaint to add a new cause of action based on defen-

dant's abuse of discretion for DOJ's refusal to so settle.

Defendant's response to plaintiffs' Motion was filed on February 27, 1998. Plaintiffs' reply was filed March 23, 1998. Defendant, by leave of court, responded to the reply on March 30, 1998. For the reasons discussed below, the court concludes that it has no authority to award the non-monetary injunctive relief requested and that, even if it did, defendant would not be required to settle this case on the same terms offered to other Nupath partners by the IRS or DOJ's Dallas office. The court therefore denies the Motion and also denies the motion for leave to amend the complaint to add this cause of action as moot.

### Background

This case is governed by the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. 97–248, 96 Stat. 324, codified at I.R.C. §§ 6221–33 [1], effective for partnership years beginning after September 3, 1982. Under TEFRA, all administrative and judicial proceedings regarding partnership items are required to be conducted at the partnership level. The principal purpose of TEFRA is to provide consistency and reduce duplication in the treatment of partnership items by requiring that they be determined in a single unified proceeding at the partnership, rather than at the partner, level. *See Slovacek v. United States*, 36 Fed.Cl. 250, 254 (1996) (citing H.R. Conf. Rep. No. 760, 97th Cong., 2d Sess. 599–600 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1190, 1371–1372).

TEFRA distinguishes between tax determinations and items that affect the entire partnership ("partnership items") and those that depend, instead, upon the unique circumstances of a partner, or some other nonpartnership-wide variable ("nonpartnership items"). *See* I.R.C. § 6231(a)(3), (4). Partnership items receive the same treatment in the hands of a partner as at the partnership level. The amount of the item, however, is

---

1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended ("I.R.C."), codified at Title 26, United States Code, and to the Treasury Regulations ("Treas.Reg.") found at Title 26, Code of Federal Regulations, as in effect during the years at issue.

proportional to the partner's share in the partnership item.

When a taxpayer enters into a settlement with the IRS with respect to his share of a partnership item, that share becomes a non-partnership item. I.R.C. § 6231(b)(1)(C). That is because the value or treatment of the item in the hands of the individual partner is determined solely by the terms of the settlement agreement and the taxpayer's own circumstances, and not by any subsequent tax determination with respect to the partnership.

On March 22, 1991 plaintiffs executed Part I (partnership items) of a Form 870–L(AD), Settlement Agreement for Partnership Adjustments and Affected Items. This settlement concerned the treatment of a partnership item, namely a loss claimed on Nupath's 1982 partnership return, of which plaintiffs claimed their allocable share as a loss deduction in their individual tax return for 1982. The settlement disallowed the entire loss reported on Nupath's 1982 return, totaling $602,667, of which plaintiffs' share was $22,-600, and imposed penalties under § 6661 for substantial understatement and under § 6621(c) for a tax motivated interest. In exchange, the IRS agreed to forego any negligence penalties under I.R.C. § 6653(a).[2]

In this refund suit, plaintiffs sought a refund of "overpayment" of the taxes they paid pursuant to the settlement agreement, under I.R.C. §§ 6401–02, which defines "overpayment" to include the payment of any tax assessed or collected after the expiration of the period of limitation, on the basis that the three-year statute of limitations, I.R.C. § 6229(a), was not validly extended by the partnership and therefore had expired before their settlement was executed. Defendant moved to dismiss the complaint in part or, in the alternative, for partial summary judgment, which was granted by this court, after briefing and oral argument, in its published order filed on August 2, 1996. *See Slovacek*, 36 Fed.Cl. at 250.

The August 2, 1996 order concluded that the partnership's three-year statute of limitations was a partnership item, because the issue of whether limitations period has been validly extended so as to permit the assessment of additional taxes against the partnership as a whole affects all partners alike (to the extent of their proportionate share). *Id.* at 254–255. The court therefore held that the portion of plaintiffs' claim that seeks a refund of the tax and interest assessed pursuant to the settlement agreement is barred by I.R.C. § 7422(h), which provides, "No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) [ (claims relating to items the taxpayer deems to be partnership items, but the IRS deems to be nonpartnership items) ] or section 6230(c) [ (claims arising out of erroneous computations) ]." *Id.*

The court also held that this portion of plaintiffs' refund claim was barred by the terms of their settlement agreement, in which they waived any claims based on partnership items. Concluding that the partnership statute of limitations was a partnership item, the court held that plaintiffs thereby waived their right to a refund. *Id.* at 256.

*Discussion*

Plaintiffs claim that, during the pendency of their suit in this court, the IRS agreed to more favorable settlement terms with other, allegedly similarly-situated, Nupath partners, and with partners of other partnerships involved in cases sharing similar issues. Plaintiffs claim that the more favorable settlements were offered to all other Nupath partners, even those who had previously settled (except for those who, like the Slovaceks, had pending refund suits in the Court of Federal Claims).[3] These allegedly more favorable settlements were purportedly offered by DOJ's tax division office in Dallas to partners with pending cases in federal district courts in Texas. It is not clear that any of these cases involved the Nupath part-

---

2. The facts of this case are set out in more detail in the court's August 2, 1996 published order.

3. The three cases are: (1) *Affleck v. United States*, Docket No. 94–437T; (2) *McLeod v. United States*, Docket No. 94–409T; and (3) *Raines v. United States*, Docket No. 94–771T.

nership. The taxpayers in the settlement agreements and in the refund suits all claim that the IRS made the original assessment after the limitations period had expired.

As previously stated, the settlement agreement executed by plaintiffs in March 1991 disallowed all partnership losses, and imposed penalties under § 6661 for substantial understatement, and under § 6621(c) for a tax motivated interest. The new, more favorable, settlement agreement allowed the deduction of seventeen percent of the partnership losses, and abated the § 6661 penalty and the penalty portion of the § 6621(c) interest. The Slovaceks made a formal request for settlement of their case on the same terms the IRS extended to the other Nupath partners, but the government rejected the offer and has refused to settle.

Plaintiffs contend that DOJ's refusal to treat plaintiffs consistently with other Nupath partners (1) violates the general principle requiring that similarly-situated taxpayers receive equal and consistent treatment and (2) constitutes an abuse of discretion. Plaintiffs claim that the Department of Justice has singled out for discriminatory treatment those Nupath partners, such as the Slovaceks, who filed suit in this court.

Defendant makes three arguments in opposition to plaintiffs' Motion. First, defendant argues that, by signing the Form 870–L(AD), Part I, which conceded the nondeductibility of the Nupath loss reported on their 1982 return, plaintiffs entered into a statutorily-binding contract under TEFRA, § 6224(c).

Second, defendant notes that I.R.C. § 6224(c)(2) and Treas. Reg. § 301.6224(c)–3T(c)(3) do not require the IRS (or DOJ) to offer plaintiffs a consistent settlement with other Nupath partners, because those provisions apply only to partnership items and do not apply to affected items (such as the § 6621(c) interest and the § 6661 penalty) or to partnership items (such as plaintiffs' allocable share of the Nupath loss) that, as this court has already held in this case, have been converted to nonpartnership items by means of a prior settlement.

Third, defendant argues that plaintiffs are not similarly situated to the other Nupath partners who received new settlement agreements from the IRS. Once plaintiffs filed their refund suit, DOJ became responsible for the government's defense and was entitled to defend the claim on any ground for which there is a factual or legal basis and to settle the claim upon whatever terms it deemed suitable. The government attorney—DOJ—contends that its authority to settle (or not) cannot be defeated by a settlement between the IRS and another Nupath partner who is not a party to this case.

### DOJ Settlement Authority

The court agrees with all three of defendant's arguments. Plaintiffs concede that the Form 870–L(AD) is binding, but argue that its terms were not comprehensive because it did not settle the issue of whether the statute of limitations had already expired before the form was executed. They claim that this was the reason the IRS entered into the new settlements and suggest that DOJ is required to do the same in this case. Plaintiffs' argument ignores the court's holding, in its August 2, 1996 order, that plaintiffs' refund claim, based on the alleged invalidity of the partnership assessment due to the expiration of the statute of limitations for assessments against the partnership, was barred by I.R.C. § 7422(h) and by plaintiffs' settlement agreement. See Slovacek, 36 Fed.Cl. at 254–256. Since the statute of limitations issue has been decided, it would not provide grounds for DOJ to enter a new settlement and ignore the Form 870–L(AD) signed by plaintiffs.

Plaintiffs concede that I.R.C. § 6224(c)(2) and Treas. Reg. § 301.6224(c)–3T(c)(3) do not require DOJ to offer them a consistent settlement. They cite the legislative history of TEFRA; United States v. Kaiser, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) (Frankfurter, J. concurring); IBM Corp. v. United States, 170 Ct.Cl. 357, 343 F.2d 914 (1965); and Bunce v. United States, 28 Fed. Cl. 500 (1993), aff'd, 26 F.3d 138 (Fed.Cir. 1994) for the proposition that similarly-situated taxpayers are entitled to equal and consistent treatment.

The cases cited by plaintiffs do not support their argument. As defendant correctly notes, neither *Kaiser* nor *IBM* involved a compromise of tax liability. Moreover, while Justice Frankfurter's concurrence in *Kaiser* articulated the general principle cited by plaintiffs—that the Commissioner is required to apply the tax laws uniformly—it also clarified that "only if there is no ... rational basis [for the non-uniformity] can the Commissioner be said to be denying 'equal' treatment." 363 U.S. at 308–309, 80 S.Ct. at 1210.

In *IBM*, the IRS retrospectively applied a ruling making computers subject to a 10% excise tax to IBM's computers, while applying it only prospectively to virtually identical computers manufactured by IBM's main competitor. 343 F.2d at 921–922. The Court of Claims held that the IRS abused its discretion in levying the tax on IBM and not on its competitor, noting that such disparate treatment gave IBM's competitor a significant competitive advantage in the computer field. *Id.* at 923. *IBM* therefore merely stands for the proposition that, once the IRS determines that an item is taxable, the tax must be applied equally to all taxpayers. Here, of course, no such determination or ruling is involved.

*Bunce* undermines, rather than supports, plaintiffs' argument. In *Bunce,* the Court of Federal Claims held that the IRS did *not* abuse its settlement discretion when it refused to enter a settlement with the plaintiffs on the same terms as with another similarly-situated taxpayer, because the plaintiffs had not shown that the IRS had intentionally discriminated against them for arbitrary or irrational reasons, nor that the IRS had discriminated "based upon impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights." *Bunce,* 28 Fed.Cl. at 509–510 (citing *Penn–Field Indus., Inc. v. Commissioner,* 74 T.C. 720, 723, 1980 WL 4468 (1980)). The court explained that "the discretion vested in the IRS to settle tax cases is by its very nature a discretion to treat similarly situated taxpayers differently," and, quoting Op. A.G.

7, 13–2 C.B. 445, 446 (1934), that the "power to compromise clearly authorizes the settlement of any case about which uncertainty exists as to liability or collection." 28 Fed. Cl. at 511. The court noted that "there is not even an obligation on the part of the IRS to treat co-investors in the same venture equally for settlement purposes." *Id.* at 509.

As the preceding cases illustrate, there is a fundamental difference between the IRS's (or DOJ's) discretion in interpreting and applying the tax laws (interpretive discretion) and its discretion to compromise tax cases (settlement discretion). *See Bunce,* 28 Fed. Cl. at 508–509. The *Bunce* court explained the distinction as follows:

> In exercising its interpretive discretion, the IRS might have the discretion to decide whether or not an item is taxable, but once that decision is made, it must be applied equally to all taxpayers.... Settlement discretion, on the other hand, is at its heart a discretion to treat similarly situated taxpayers differently ... [and] includes discretion to weigh the cases of similarly situated taxpayers individually.

*Id.* at 509.[4]

 In order to prevail on an abuse of settlement discretion claim, plaintiffs must show both (1) that other similarly-situated taxpayers have received more favorable settlements and (2) that the IRS (or DOJ) intentionally singled out plaintiffs for arbitrary or irrational reasons. *Id.* at 510. However, plaintiffs here base their allegations of irrational and arbitrary discrimination solely on DOJ's refusal to settle the Court of Federal Claims cases on the same terms as those of other Nupath partners (or allegedly similarly-situated partners of other partnerships) who have either not filed refund suits or have filed in federal district court (mostly within the Fifth Circuit). As defendant correctly contends, this clearly constitutes a rational basis for disparate treatment.

The federal district courts in Texas are bound by the Fifth Circuit's decision in *Alexander v. United States,* 44 F.3d 328, 332 (5th Cir.1995), which held that a settlement

---

4. Whether equal protection grounds are a proper basis for the award of non-monetary or injunctive relief by this court, absent specific statutory authority to do so, is not decided here.

agreement with the IRS regarding the treatment of partnership items did not preclude a refund action based on the expiration of the partnership statute of limitations. This court however, declined to follow *Alexander* and concluded that plaintiffs' refund action based on the expiration of the statute of limitations was barred by I.R.C. § 7422(h) and by the settlement agreement. 36 Fed.Cl. at 254–256. Therefore it is not irrational or arbitrary for DOJ to refuse to settle cases in this court on the same terms as those pending in federal district courts bound by *Alexander,* where defendant's litigating risks are greater.

Moreover, the Nupath partners who have been offered the more favorable settlements by the IRS are not similarly situated to plaintiffs. As defendant correctly argues, once plaintiffs filed their refund action in court, their case was referred to DOJ, and the authority to settle their case shifted from the IRS to the Attorney General, or her delegate. *See* I.R.C. § 7122(a). This authority cannot be defeated by a settlement made by the IRS with another taxpayer, since the IRS can no more settle this case indirectly by binding DOJ to settlement terms the IRS negotiated with other taxpayers, than the IRS can settle the case directly. *See Bergh v. Department of Transp.,* 794 F.2d 1575, 1577 (Fed.Cir.1986) (settlement decision is "within the discretion of the agency conducting the litigation."). *See also United States v. Forma,* 784 F.Supp. 1132, 1139 (S.D.N.Y.1992) ("Once a tax matter is referred to the [DOJ] only the Attorney General ... may settle the matter.") Moreover, DOJ is not required to give detailed reasons for its settlement decisions in each case. *Bergh,* 794 F.2d at 1577.

Plaintiffs also argue that the legislative intent behind TEFRA was to unify tax proceedings regarding partnerships and to treat individual partners consistently. They argue that this legislative history requires DOJ to treat plaintiffs consistently with other Nupath partners, who obtained a more favorable settlement from the IRS. Although they concede that I.R.C. § 6224(c) is inapplicable in this case, they cite it as an analogy supporting their argument.

Both the legislative history and the plain language of TEFRA only require consistency in the treatment of *partnership* items. Once partnership items are converted into nonpartnership items, the TEFRA provisions requiring consistent treatment of partnership items no longer apply. *See Wall v. United States,* 133 F.3d 1188, 1190 (9th Cir.1998) (since partnership items on partner's return became nonpartnership items when the individual partner filed suit under § 6228(b), partner could no longer base his entitlement to a refund on § 6230(c)(4), which provides that the treatment of partnership items on the partnership return shall be conclusive, but was required to establish that he had overpaid his taxes.) In this case, the partnership items on plaintiffs' return were converted into nonpartnership items by plaintiffs' settlement of those items, and therefore consistent treatment of those items is no longer required under TEFRA.

In fact, requiring DOJ to offer a consistent settlement with respect to items that have been converted by settlement to nonpartnership items, would be contrary to the plain language of I.R.C. § 6224(c)(2), which requires the IRS to offer a consistent settlement *only* with respect to *partnership* items. The plain language of a statute governs over any contrary intent expressed in the legislative history. *See City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 337, 114 S.Ct. 1588, 1592–1593, 128 L.Ed.2d 302 (1994). There is nothing in the plain language of the statutory provisions of TEFRA that requires the government to offer partners consistent settlements with respect to *non-partnership* items.

### Jurisdiction to Award Injunctive Relief

A more fundamental reason to deny plaintiffs' motion is that it fails to request relief within the authority of this court to provide.

The Court of Federal Claims is an Article I court of limited jurisdiction created by Congress as a forum where private parties could sue the government for non-tort money claims, where the claims would otherwise be barred by sovereign immunity. *See Kanemoto v. Reno,* 41 F.3d 641, 644–645

(Fed.Cir.1994) ("The remedies available in [this] court extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances...."). *E.g. Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997) (taxpayers' claims for declaratory and injunctive relief were outside jurisdiction of Court of Federal Claims). *See also United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1501–1502, 23 L.Ed.2d 52 (1969) (jurisdiction of Court of Claims is limited to money claims and does not extend to equitable matters); *Beck v. Secretary of Dep't of HHS*, 924 F.2d 1029, 1036 (Fed.Cir.1991) ("Claims Court has no general equitable power to issue injunctions in cases other than those in which such power has explicitly been granted.")

Plaintiffs have not, and cannot, identify any statutory provision that authorizes this court to compel DOJ, or any party, to settle a case, never mind to dictate the particular terms of a settlement. Absent such statutory authority, this court is without jurisdiction to grant the requested injunctive relief.

*Motion to Amend Complaint*

■ Although Rule 15(a) of the Rules of the Court of Federal Claims (RCFC) provides that "leave [to amend] shall be freely given," a court may deny a motion to amend a complaint if the amendment would be futile, because, for example, the claim added by the amendment could not withstand a motion to dismiss. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (discussing identical F.R.C.P. 15(a) and affirming district court's denial of motion to amend where proposed amendment would have alleged a claim that was barred by the applicable statute of limitations). In this case, plaintiffs' proposed amendment would be futile because, absent an order compelling consistent treatment, the amendment would serve no purpose.

5. The court notes that, while defendant is not required to settle this case on particular terms, defendant apparently seriously considered a settlement offer for several months last summer.

In their reply, plaintiffs inappropriately characterized defendant's refusal to settle the Court of Federal Claims cases as "the lowest form of forum shopping." However, it is plaintiffs, not defendant, who selected this forum. As defendant correctly notes, if plaintiffs had prevailed on their motion for partial summary judgment seeking a deduction of the entire amount of their allocable share of the reported 1982 Nupath loss, it is doubtful that they would be seeking a settlement calling, in part, for allowance of their allocable share of only 17% of the reported loss. They cannot have it both ways: seeking the fruits of victory but not accepting the consequences of defeat.

For the foregoing reasons, plaintiffs' motion for leave to amend the complaint or, in the alternative, to compel consistent treatment, is denied. The parties shall file a joint status report on or before May 22, 1998 proposing a schedule for further proceedings.[5]

Thus, the parties may wish to consider reactivating discussions to settle the remainder, if not all, of this case.